**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Blaze J., | No. CV-24-02251-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Claimant Blaze J. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying his disability insurance benefits. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

**I.     BACKGROUND**

Claimant filed applications for disability insurance benefits on October 13, 2021 under Titles II and XVI. (Administrative Record ("AR") 23.) After a hearing, the ALJ denied Claimant's claim on November 27, 2023. (AR 20–33.) The ALJ determined Claimant had the severe impairments of schizophrenia spectrum, post-traumatic stress disorder (PTSD), and affective disorder. (AR 26.) The ALJ evaluated the medical evidence and testimony, and concluded that Claimant was not disabled. (AR 33.) In doing so, the ALJ determined that Claimant had the Residual Functional Capacity ("RFC") to perform "a full range of work at all exertional levels" with the following non-exertional

---

[1]     As a matter of practice, Claimant is referred to as such and, at most, by his first name and last initial to protect his privacy.

limitations: "he can perform simple, routine, repetitive tasks. He can have occasional time around the public and co-workers." (AR 28.)

Based on the RFC formulation and the testimony of the vocational expert ("VE") at the hearing, the ALJ found that Claimant could perform jobs that exist in significant numbers in the national economy, such as "Janitor," "Hospital Housekeeper," and "Dishwasher." (AR 32–33.) The ALJ thus denied Claimant's claim for benefits. (AR 33.)

The Appeals Council denied Claimant's request for review on July 12, 2024. (AR 1.) Claimant then appealed to this Court. (Doc. 1.)

## II.     LEGAL STANDARD

Only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Commissioner's disability determination may be set aside only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). To determine whether substantial evidence supports a decision, the record must be considered as a whole. *Id.* But if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, an ALJ must follow a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not

disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC—the most he can do with his impairments—and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he or she determines whether the claimant can perform any other work that exists in "significant numbers in the national economy" based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099. If so, the claimant is not disabled. *Id.*

## III. DISCUSSION

Claimant identifies three arguments on appeal, all of which relate to the ALJ's RFC formulation: (1) the RFC does not account for Claimant's moderate limitations in adapting or managing himself; (2) the RFC does not account for Claimant's moderate limitations in concentration, persistence, and pace; and (3) the RFC is not supported by substantial evidence. (Doc. 11 at 4.)

As a preliminary matter, Claimant asserts that an ALJ must translate findings at step three of the sequential analysis relating to mental impairments into specific limitations in the RFC. (*Id.* at 7–8 (first citing SSR 96-8p; then citing SSR 85-16; and then citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A).) The Commissioner does not address or dispute this interpretation of the pertinent regulations, conceding the issue for purposes of this case. *See, e.g.*, *Oester v. Wright Med. Tech., Inc.*, 2021 WL 3742439, at *5 (D. Ariz. 2021) ("Failure to respond to the merits of one party's argument constitutes a concession of that argument." (citation omitted)). Accordingly, the question in the first two issues raised by Claimant is whether the ALJ's RFC adequately addressed Claimant's mental limitations.

### A.     Moderate Limitations in Ability to Adapt and Manage Oneself

Claimant first argues that the RFC did not include limitations addressing the ALJ's finding that Claimant had moderate limitations in adapting or managing himself. (Doc. 11 at 7.) Specifically, Claimant argues that the limitations in the RFC regarding "simple, routine, repetitive tasks," (AR at 28), does not address limitations in his ability to adapt and manage himself. (Doc. 11 at 8–9.)

At step three of the sequential analysis, the ALJ made the following finding: "As for adapting or managing oneself, the claimant has experienced a moderate limitation." (AR 27.) In making this finding, the ALJ summarized Claimant's self-reports, including that he "reported self-isolation, wearing the same clothing for multiple days, needing reminders to bathe, as well as reminders to take his medication," and that he "does not prepare his own meals and relies on his wife for assistance," but also that he was able to "perform household chores, perform yard work, drive, care for pets, and care for others." (AR 27–28.) The ALJ also summarized medical clinicians' observations, including that Claimant showed "appropriate grooming and hygiene, ability to follow instructions, [and] respond[ed] to questions," as well as the finding of Dr. James E. Huddleston, Ph.D., who opined that Claimant "possesses the ability to adapt to changes in work routine, and to recognize and respond appropriately to potential hazards." (AR 28.)

Despite the mixed evidence on this issue, the ALJ reiterated his finding of a moderate limitation, stating that Claimant has some "ability to adapt and manage himself [indicating] no more than a moderate limitation in this area of functioning." (*Id.*) The ALJ then stated that "[a]ny limitations associated with this area of functioning has [sic] been taken into consideration in the [RFC], by limiting the claimant to simple, routine and repetitive tasks, with no more than occasional time around the public and co-workers." (*Id.*) Aside from this conclusory statement, the ALJ did not explain whether or how he accounted for the moderate limitations in Claimant's adaptation and self-management in the RFC, (AR 28–31), and he did not discuss these limitations in his RFC analysis other than to restate his summary of Dr. Huddleston's opinion that Claimant "possesses the

ability to adapt to changes in work routine, and to recognize and respond appropriately to potential hazards." (AR 31.)

Claimant argues the ALJ failed to translate his mental impairments concerning his ability to adapt and manage himself into the RFC. The Commissioner responds first by arguing that the ALJ "reasonably accounted for" Claimant's limitation adapting and managing himself "by restricting him to simple, routine, and repetitive tasks, with only occasional time around the public and coworkers," relying on the opinion of Dr. J. Edd Bucklew, Ph.D. (Doc. 18 at 3–5.) Dr. Bucklew found that Claimant was "Moderately Limited" in his "ability to respond appropriately to changes in the work setting," explaining that "Claimant can adjust to routine, familiar social interaction as needed to complete simple and complex tasks." (AR 88.) Based on Dr. Bucklew's explanation, the Commissioner argues that that RFC formulation adequately accounted for Claimant's adaptability and self-management limitations by limiting his interactions with coworkers and the public.

This argument misses the mark. Contrary to the Commissioner's assertion, (Doc. 18 at 4–5), the ALJ did not cite records from Dr. Bucklew in concluding that Claimant had moderate limitations regarding his ability to adapt and manage himself. (AR 27–28.) Instead, the ALJ cited Dr. Bucklew only in his discussion of Claimant's social limitations. (AR 30 (discussing Dr. Bucklew's findings without addressing Claimant's ability to adapt or manage himself).) Only the reasons the ALJ provides in the disability determination may be reviewed on appeal; courts "may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2007). Thus, because the ALJ did not consider Dr. Bucklew's findings when assessing Claimant's moderate limitations in his ability to adapt or manage himself, the ALJ may not be affirmed on that basis.

Moreover, as noted above, the ALJ's RFC analysis does not discuss Claimant's adaptability and self-management limitations at all. The only relevant statement in the ALJ's decision is boilerplate language in the step three analysis that "[a]ny limitations

associated with this area of functioning [regarding adaptability and self-management] has [sic] been taken into consideration in the [RFC]." (AR 28.) "But numerous . . . courts, including in the Ninth Circuit, have held that boilerplate statements are insufficient to explain why mental limitations identified by the ALJ do not find expression in the RFC." *Tammy W. v. Comm'r*, ___ F. Supp. 3d ___, 2025 WL 1720322, at *6 (W.D. Wash. 2025) (collecting cases). In cases where an ALJ fails to explain why a "limitation doesn't appear in the RFC remand is needed so the ALJ can explain how and why he reached that conclusion." *Id.* (citation modified); *cf. Vrdoljak v. Kijakazi*, 665 F. Supp. 3d 923, 930–31 (N.D. Ill. 2023) (reversing where ALJ failed to "build the necessary 'logical bridge' between the evidence of the claimant's mental limitations and the conclusion that those limitations required no restrictions in the RFC" and explaining that "boilerplate language does not 'connect the dots' in explaining why the claimant's mental limitations do not affect the capacity to perform medium unskilled work" (citation modified)). This is because such boilerplate language "suggests that if a . . . limitation doesn't appear in the RFC, it's because the ALJ found that it wouldn't restrict [the claimant's] ability to work," which would require the ALJ to explain how he "reached that conclusion." *Tammy W.*, ___ F. Supp. 3d ____, 2025 WL 1720322, at *6 (citation omitted).

        The two cases cited by Claimant, both of which involve an ALJ's failure to translate mental impairments into RFCs, further support remand in this case. (Doc. 11 at 8–9.) In *Matthew W.B. v. O'Malley*, the court found that mental impairments preventing a claimant from maintaining regular workplace attendance were not addressed by an RFC that limited him to non-complex tasks, explaining that "[i]t strains logic to suggest that limiting the complexity of the tasks to be performed at work somehow accounts for an impairment in a person's ability to make it to work in the first place." 2024 WL 5466665, at *1–2 (C.D. Cal. 2024). Likewise, in *Atkinson v. Colvin*, the court found that an RFC that limited a claimant to non-complex tasks did not "sufficiently account for [the claimant's] moderate limitations in performing activities within a schedule, maintaining regular attendance in the workplace, or completing a normal workday and workweek without interruption."

2015 WL 5840210, at *3 (C.D. Cal. 2015).

The Commissioner argues that these cases are distinguishable because they involved mental limitations relating to attendance, not the mental limitations present here, and suggests *Stubbs-Danielson v. Astrue*, is more pertinent. 539 F.3d 1169 (9th Cir. 2008). In that case, the Ninth Circuit affirmed after concluding that the "ALJ translated [the claimant's] condition, including the pace and mental limitations, into the only concrete restrictions available to him," which was an RFC limitation for simple tasks. *Id.* at 1174.

The circumstances of this case are more similar to those in *Matthew W.B.* and *Atkinson* than *Stubbs-Danielson*. Although the cases Claimant cites did not involve a moderate limitation in ability to adapt or manage oneself, they both establish that an RFC's limitations must be tied to, and address, the claimant's mental impairments and limitations. Like in those cases, the RFC limitation here, which limited Claimant to simple, routine, repetitive *tasks*, did not fully address Claimant's limitations in adapting or managing himself since those limitations pertain to the *work environment* and, at most, a limitation to routine and repetitive tasks would only address the ability to adapt. Likewise, the RFC limitation that Claimant only occasionally spend time with the public and co-workers has little to do with Claimant's adaptability and self-management. Ultimately, it "strains logic" to suggest that limiting the type of tasks Claimant can perform or the frequency of his interactions with others fully addresses his moderate limitation in his ability to adapt to change and manage himself—the limitations are largely different in nature.

Furthermore, the Commissioner's reliance on *Stubbs-Danielson* is misplaced for two reasons. First, the Ninth Circuit held that the RFC's limitation to simple tasks addressed limitations relating to concentration, persistence, and pace, which are largely different in nature than the adaptability and self-management limitations at issue here. 539 F.3d at 1174 ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Put another way, the court's holding in *Stubbs-Danielson* as to the adequacy of the "simple work" RFC restriction was based on that

restriction's correlation to the mental limitations present in that case.

Second, the ALJ in *Stubbs-Danielson* translated the limitations into the "only concrete restrictions available to him," *id.*, but here the ALJ had more restrictions available to him, such as limiting "changes in the work setting." (AR 88.) ALJs routinely include RFC limitations regarding changes in the work setting, which confirms that such restrictions could address Claimant's limitations here. *See, e.g.*, *Kristina V. v. Comm'r*, 2025 WL 2355216 (D. Ariz. 2025) (RFC contained limitation allowing "occasional changes in a routine work setting"); *N.L.B. v. Kijakazi*, 2022 WL 22879646, at *3 (C.D. Cal. 2022) (RFC included separate limitations for carrying out "simple instructions," undertaking "simple tasks" with additional constraints, and making "simple work-related decisions in a job that involves only occasional changes in a routine work setting"). Thus, the ALJ erred in choosing some restrictions but not others available to him without any explanation.

Generally, the appropriate remedy when an ALJ errs in the disability determination process is remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits."); *see also Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) ("If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded."). The ALJ's error was not harmless because the VE only considered the ALJ's above restrictions in determining whether there would be jobs in the national economy for a worker with such restrictions. (AR 59–62.) *See Tammy W.*, ___ F. Supp. 3d ____, 2025 WL 1720322, at *8. Further administrative proceedings could remedy the ALJ's errors because those errors largely lie in his failure to properly evaluate and explain the RFC in the context of his finding that Claimant suffers mental limitations concerning his ability to adapt and management himself. Thus, there are outstanding issues that must be resolved, and remand is appropriate on this issue.

**B.     Moderate Limitations in Concentrating, Persisting, or Maintaining Pace**

Although the ALJ's decision will be vacated for the reasons set forth above, Claimant's additional arguments concerning the RFC will be addressed to tailor the scope of additional proceedings on remand.

Like his first argument, Claimant next asserts that the ALJ failed to translate his moderate limitations in "concentrating, persisting or maintaining pace" into the RFC, arguing that the RFC's limitation to simple, routine, repetitive tasks is insufficient. (Doc. 11 at 9–12.) In support of this argument, Claimant primarily relies on *Brink v. Commissioner of Social Security Administration*, an unpublished Ninth Circuit opinion stating that the "ALJ failed to capture [the claimant's] functional limitations resulting from his moderate impairments in concentration, persistence, or pace when the ALJ's hypothetical to the vocational expert stated only that [the claimant] could perform simple, repetitive tasks." 599 F. App'x 657, 658 (9th Cir. 2015).

The Commissioner, in turn, argues that *Stubbs-Danielson* is dispositive. Again, the court there affirmed the ALJ's RFC limiting the claimant to "simple, routine, repetitive sedentary work," explaining that this restriction addressed the claimant's mental limitation "related to pace and the other mental limitations regarding attention, concentration, and adaption." 539 F.3d at 1173–74; *see also Atkinson*, 2015 WL 5840210, at *3 (citing *Stubbs-Danielson* in finding that "the ALJ's RFC restriction for non-complex tasks may encompass the concentration, persistence, and pace limitations assessed").

The Commissioner is correct. *See Hart v. Massanari*, 266 F.3d 1155, 1170–71 (9th Cir. 2001); *id.* at 1170 ("Binding authority . . . cannot be considered and cast aside; it is not merely evidence of what the law is. Rather, caselaw on point *is* the law."). Accordingly, the RFC's restriction to "simple, routine, and repetitive tasks" was an appropriate translation of the mental limitations of concentration, persistence, and maintaining pace. The ALJ did not err and need not address this issue on remand.

**C.     Claimant's Other RFC Arguments**

Claimant argues that two portions of the RFC are not supported by substantial

evidence. Specifically, he argues that the restriction of socialization with the public and coworkers is not supported by substantial evidence because it did not also include a restriction on interactions with supervisors. He also argues that the restriction to simple, routine, and repetitive tasks was inappropriate because the evidence shows that he should have been restricted to 1-2 step tasks. (Doc. 11 at 13.). His arguments are unpersuasive.

Substantial evidence supports the ALJ's socialization limitation that Claimant only spend "occasional time around the public and co-workers." (AR 28.) First, Dr. Bucklew opined that Claimant was only moderately limited with respect to his "ability to interact appropriately with the general public" and his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," *but not* in his "ability to accept instructions and respond appropriately to criticism from supervisors." (AR 88.) Second, as the Commissioner points out, Dr. Huddleston's statement that Claimant "may struggle to sustain stable relationships with co-workers and supervisors" was not an imperative assessment, and therefore did not need to be included in the RFC. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008) (finding that a medical opinion "offered as a *recommendation*, not an imperative" was not required to be accepted by the ALJ).

Likewise, substantial evidence supports the ALJ's restriction to simple, repetitive tasks. While Dr. Luz Mogrovejo, Ph.D., concluded that Claimant was "able to engage in 1-2 step tasks," (AR 30 (citing AR 69, 77)), the ALJ explained that this conclusion was not supported by the evidence as a whole, including that Claimant "scored 27 out of 30 on the MMSE, suggesting adequate memory and concentration," (AR 30 (citing AR 724)), and "was also largely observed as alert and oriented with intact attention and concentration, insight within normal limits, clear speech, logical and coherent thought processes, and appropriate eye contract," (AR 30 (citing AR 479, 500, 505, 516, 525, 586, 653, 680, 709, 746 (collectively showing both normal and abnormal mental status examinations))).

Claimant essentially argues that the ALJ failed to assess the evidence in the record in the way he would have preferred. But the "entire record" must be considered "as a whole, weighing both the evidence that supports and evidence that detracts from the

Commissioner's conclusion," *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1009 (9th Cir. 2007)), and the ALJ may not be reversed if there is substantial evidence supporting his conclusions. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (quoting *Orn*, 495 F.3d at 630). As outlined above, the evidence in the record with respect to the ALJ's RFC in these two areas is, at a minimum, subject to more than one rational interpretation. Accordingly, the ALJ did not err and these issues need not be revisited on remand.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 25th day of September, 2025.

_____
Honorable Sharad H. Desai
United States District Judge